MICHAEL J. ZINNA (*pro hac vice*)
mzinna@kelleydrye.com
LEE BRENNER (State Bar No. 180235)
lbrenner@kelleydrye.com
DAVID FINK (State Bar No. 169212)
dfink@kelleydrye.com
DAVID G. LINDENBAUM (*pro hac vice*)
dlindenbaum@kelleydrye.com
WHITNEY M. SMITH (*pro hac vice*)
wsmith@kelleydrye.com
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
Telephone      212-808-7800
Facsimile      973-503-5950

Attorneys for Plaintiff ZOMM, LLC


DAVID R. EBERHART (S.B. #195474)
deberhart@omm.com
LUANN L. SIMMONS (S.B. #203526)
lsimmons@omm.com
SINA ARIA (S.B. #287529)
saria@omm.com
HANNAH Y. CHANOINE (*pro hac vice*)
hchanoine@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone:     +1 415 984 8700
Facsimile:     +1 415 984 8701

Attorneys for Defendant
APPLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ZOMM, LLC,<br><br>                    Plaintiff,<br><br>         v.<br><br>APPLE INC.,<br><br>                    Defendant. | Case No. 4:18-cv-04969-HSG<br><br>**STIPULATION & ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>Judge:  Haywood S. Gilliam, Jr. |

Plaintiff Zomm, LLC and Defendant Apple Inc. (collectively, the "Parties") hereby agree, subject to approval by the Court, that the following procedures shall govern discovery of Electronically-Stored Information ("ESI") in this case:

1.      This Order supplements all other discovery rules and orders. It streamlines ESI production to promote a "just, speedy, and inexpensive determination of this action, as required by Federal Rule of Civil Procedure 1."

2.      This Order may be modified in the Court's discretion or by stipulation. The Parties shall jointly submit any proposed modifications within 30 days after the Federal Rule of Civil Procedure 16 Conference.

3.      As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a Party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.  A Party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

4.      The Parties are expected to comply with the District's E-Discovery Guidelines ("Guidelines") and are encouraged to employ the District's Model Stipulated Order Re: the Discovery of Electronically Stored Information and Checklist for Rule 26(f) Meet and Confer regarding Electronically Stored Information.  The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

    a.  Only ESI created or received after January 1, 2009 through the filing date of this Action will be preserved if it existed in a party's possession, custody or control as of April 23, 2018;

    b.  The parties will exchange a list of the types of ESI they believe should be preserved and the names or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and

"marketing manager." The parties shall add or remove custodians as reasonably

necessary;

c.   The parties will agree on the number of custodians per party for whom ESI will be

preserved;

d.   The parties agree to discuss data sources that may contain ESI that may not be

reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P.

26(b)(2)(B).

5.   With respect to Plaintiff's patent claim, general ESI production requests under

Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic

correspondence (collectively "email"). To obtain email related to the patent claim, Parties must

propound specific email production requests.

a.   Email production requests shall only be propounded for specific issues, rather than

general discovery of a product or business.

b.   Email production requests shall be phased to occur after the Parties have

exchanged initial disclosures and basic documentation about the patents, the prior

art, the accused instrumentalities, and the relevant finances. While this provision

does not require the production of such information, the Court encourages prompt

and early production of this information to promote efficient and economical

streamlining of the case.

c.   Email production requests shall identify the custodian, search terms, and time

frame. The Parties shall cooperate to identify the proper custodians, proper search

terms and proper timeframe as set forth in the Guidelines.

d.   The foregoing limitations shall not apply to discovery requests related to Plaintiff's

non-patent claims.

6.   For all such requests, each requesting Party shall limit its email production

requests to: (1) a total of five custodians per producing Party if Plaintiff's non-patent claims are

dismissed and Plaintiff's patent claim is not stayed; (2) a total of ten custodians per producing

Party if Plaintiff's non-patent claims are not dismissed and Plaintiff's patent claim is stayed; or

(3) a total of fifteen custodians per producing Party if Plaintiff's non-patent claims are not dismissed and Plaintiff's patent claim is not stayed. The Parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request.

      7.      Each requesting Party shall limit its email production requests to: (1) a total of five search terms per custodian per Party if Plaintiff's non-patent claims are dismissed and Plaintiff's patent claim is not stayed; (2) a total of ten search terms per custodian per Party if Plaintiff's non-patent claims are not dismissed and Plaintiff's patent claim is stayed; or (3) a total of fifteen search terms per custodian per Party if Plaintiff's non-patent claims are not dismissed and Plaintiff's patent claim is not stayed. The Parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The Court encourages the Parties to confer on a process to test the efficacy of the search terms. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Notwithstanding prior agreement on the search terms to be used for searches, should a search for emails produce an unreasonably large number of non-responsive or irrelevant results, the Parties shall (at the producing party's request) meet and confer to discuss application of further negative search restrictions (e.g., if a single search was for "card" and ninety percent of the resulting emails came from the irrelevant term "credit card," a negative limitation to ignore emails only returned as a

result of "credit card" may be applied to remove these emails).  The Party receiving production shall not unreasonably oppose such further restrictions designed to filter immaterial email search results.  Should a Party serve email production requests with search terms beyond the limits agreed to by the Parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any Party shall bear all reasonable costs caused by such additional discovery.

8.      Nothing in this Order prevents the Parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery. Such topics should be discussed pursuant to the District's E-Discovery Guidelines.

9.      **Documents Protected from Discovery.**  Communications involving outside and/or in-house counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

10.     **Format for production of documents – documents existing in electronic format.**  Except as otherwise provided for in this Stipulation, all documents existing in electronic format shall be produced in multiple page, searchable PDF format at a resolution of at least 300 dpi in accordance with the following:

    a. PDF files shall be produced along with Concordance/Opticon image load files that indicate the beginning and ending of each document.

    b. For documents that already exist in PDF format prior to production (i.e., which the producing party receives from a client or third party in PDF format), the producing party may provide them in that same PDF format, whether searchable or non-searchable.  For documents converted to PDF format prior to production, the producing party shall make reasonable efforts to convert to searchable PDF.

    c. **Metadata.**  Load files should include, where applicable, the information listed in the Table of Metadata Fields, attached as Exhibit A. However, the Parties are not obligated to include metadata for any document that does not contain such metadata in the original, if it is not possible to automate the creation of metadata

when the document is collected. The Parties reserve their rights to object to any request for the creation of metadata for documents that do not contain metadata in the original.

    d.  **Production media and encryption of productions.** Unless otherwise agreed, the Parties shall provide document productions in the following manner: The producing party shall provide the production data on CDs, DVDs, external hard drives or SFTP, as appropriate. The producing party shall encrypt the production data using WinRAR encryption, and the producing party shall forward the password to decrypt the production data separately from the CD, DVD, external drive or SFTP to which the production data is saved.

11.    **Format for production of documents – hardcopy or paper documents.** All documents that are hardcopy or paper files shall be scanned and produced in the same manner as documents existing in electronic format, above.

12.    **Source code.** This Stipulation does not govern the format for production of source code, which shall be produced pursuant to the relevant provision of the Protective Order.

13.    **Parent and child emails.** The Parties shall produce email attachments sequentially after the parent email.

14.    **Native files.** The Parties will meet and confer to discuss requests for the production of files in native format, on a case-by-case basis. If the Parties are unable to reach agreement with regard to requests for additional documents in native-file format, the Parties reserve the right to seek relief from the Court. Documents produced natively shall be represented in the set of imaged documents by a slipsheet indicating the production identification number and confidentiality designation for the native file that is being produced.

15.    **Databases.** Certain types of databases are dynamic in nature and will often contain information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Thus, a Party may opt to produce relevant and responsive information from databases in an alternate form, such as a report or data table. These reports or data tables will be produced in a static format.

The Parties agree to identify the specific databases, by name, that contain the relevant and responsive information that Parties produce.

16. **Requests for hi-resolution or color documents.** The Parties agree to respond to reasonable and specific requests for the production of higher resolution or color images. Nothing in this Stipulation shall preclude a producing party from objecting to such requests as unreasonable in number, timing or scope, provided that a producing party shall not object if the document as originally produced is illegible or difficult to read. The producing party shall have the option of responding by producing a native-file version of the document. If a dispute arises with regard to requests for higher resolution or color images, the Parties will meet and confer in good faith to try to resolve it.

17. **Foreign language documents.** All documents shall be produced in their original language. Where a requested document exists in a foreign language and the producing party also has an English-language version of that document that it prepared for non-litigation purposes prior to filing of the lawsuit, the producing party shall produce both the original document and all English-language versions. In addition, if the producing party has a certified translation of a foreign-language document that is being produced, (whether or not the translation is prepared for purposes of litigation) the producing party shall produce both the original document and the certified translation. Nothing in this agreement shall require a producing party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

**IT IS SO STIPULATED.**

Dated: January 18, 2019                    KELLEY DRYE AND WARREN LLP


By:      /s/ *Michael J. Zinna*
                             Michael J. Zinna
Attorneys for Plaintiff
ZOMM, LLC


Dated: January 18, 2019                    O'MELVENY & MYERS LLP


By:      /s/ *Luann L. Simmons*
                             Luann L. Simmons
Attorneys for Defendant
APPLE INC.

## CERTIFICATE OF SERVICE

I certify that all counsel of record is being served on January 18, 2019, with a copy of this document via the Court's CM/ECF system.

*/s/ Luann L. Simmons*

Luann L. Simmons


## FILER'S ATTESTATION

Pursuant to Local Rule 5-1(i)(3), I hereby attest that the other signatory listed, on whose behalf the filing is submitted, concurs in the filing's content and has authorized the filing.

*/s/ Luann L. Simmons*

Luann L. Simmons

# **ORDER**

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated: January 22, 2019

Haywood S. Gilliam, Jr.
United States District Court Judge

# EXHIBIT A

## TABLE OF METADATA FIELDS

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|---|
| BegDoc | Unique ID (Bates number) | Paragraph | The Document ID number associated with the first page of an email. | The Document ID number associated with the first page of a document |
| EndDoc | Unique ID (Bates number) | Paragraph | The Document ID number associated with the last page of an email. | The Document ID number associated with the last page of a document. |
| BegAttach | Unique ID (Bates number) Parent-Child Relationships | Paragraph | The Document ID number associated with the first page of a parent email. | The Document ID number associated with the first page of a parent document. |
| EndAttach | Unique ID (Bates number) Parent-Child Relationship | Paragraph | The Document ID number associated with the last page of the last attachment to a parent email. | The Document ID number associated with the last page of the last attachment to a parent document. |
| Pages | Pages | Number | The number of pages for an email. | The number of pages for a document. |
| DateSent | | Date (MM/DD/YYYY format) | The date the email was sent. | For email attachments, the date the parent email was sent. |
| Author | Author Display Name (e-mail) | Paragraph | The display name of the author or sender of an email. | The name of the author as identified by the metadata of the document. |
| To | Recipient | Paragraph | The display name of the recipient(s) of an email. | The display name of the recipient(s) of a document (e.g., fax recipients). |

ESI STIPULATION AND ORDER
4:18-CV-04969-HSG

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|---|
| CC | CC | Paragraph | The display name of the copyee(s) of an email. | |
| BCC | BCC | Paragraph | The display name of the blind copyee(s) of an email. | |
| Subject | Subject (e-mail) | Paragraph | The subject line of an email. | The subject of a document from entered metadata. |
| Custodian | Custodian | Paragraph | The custodian of an email. | The custodian of a document. |