UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZOMM, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>    Defendant. | Case No. 18-cv-04969-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS AND STAY**<br><br>Re: Dkt. No. 45 |

On April 23, 2018, Plaintiff Zomm, LLC ("Zomm") filed this action against Apple Inc. ("Apple") in the District Court for the Southern District of New York, asserting infringement of U.S. Patent No. 8,351,895 ("the '895 Patent"), as well as breach of contract and unfair competition under New York law. Dkt. No. 1. The parties later stipulated to transfer venue to the Northern District of California. Dkt. No. 13. Thereafter, Plaintiff filed an amended complaint, which in part reframed the breach of contract and unfair competition claims as causes of action under California law. Dkt. No. 37 ("FAC").

Now pending before the Court is Defendant's motion to dismiss the amended complaint's two non-patent causes of action and to stay the patent cause of action pending *inter partes* review ("IPR"), briefing for which is complete. *See* Dkt. Nos. 45 ("Mot."), 57 ("Opp."), 62 ("Reply"). After carefully considering the parties' arguments, the Court **GRANTS** Defendant's motion.

**I.     MOTION TO DISMISS**

The amended complaint includes two non-patent causes of action: (1) breach of contract, and (2) common-law unfair competition ("CLUC"). FAC ¶¶ 88–98. Apple moves to dismiss both causes of action. Mot. at 6–16.

**A.     Legal Standard**

Federal Rule of Civil Procedure ("Rule") 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 9(b) imposes a heightened pleading standard for claims that "sound in fraud." Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

//
//
//

### B. Breach of Contract Claim

The amended complaint asserts that Apple breached a confidentiality agreement between the parties "by using Confidential Information provided by Zomm to Apple for impermissible purposes, including Apple's own benefit, in direct contravention of the terms of the Agreement." FAC ¶ 92. Apple moves to dismiss this cause of action because "(1) Zomm identifies no confidential information allegedly exploited in violation of the Agreement, and (2) the Agreement contemplates independent development by Apple, rendering insufficient under *Twombly* and *Iqbal* the allegation that Apple launched the purportedly similar Emergency SOS feature." Mot. at 13.

In response, Zomm frames the purportedly confidential information exploited by Apple as follows: (1) Zomm employees "shared details of what they were planning for the then-unreleased iOS version of the Wireless Leash"; and (2) "Zomm executives also disclosed in those meetings that they intended to create a watch, bracelet and other wearables." Opp. at 14.[1] Zomm then contends that "Apple violated the Agreement by using Zomm's Confidential Information for its own benefit, by developing a product similar to Zomm's Emergency SOS feature in a wearable form, after Zomm disclosed this idea to Apple in discussions pursuant to the parties' Confidentiality Agreement." *Id.* at 17.

Undermining Zomm's breach-of-contract claim is that the amended complaint alleges that Apple began to exploit Zomm's confidential information in December 2011. FAC ¶ 25 ("Beginning in December 2011 and continuing through November 2016 . . . ."). December 2011 however, was *after* both the Wireless Leash Plus's release and the '895 Patent's publication. *See* FAC ¶ 20 (noting the Wireless Leash Plus's November 2011 release), '895 Patent (noting a March 10, 2011 prior publication date). And under the terms of the confidentiality agreement, information either reverse engineerable from the Wireless Leash Plus product or contained in the '895 Patent no longer constituted confidential information. *See* Confidentiality Agreement § 1

---

[1] Zomm further contends that by submitting the confidentiality agreement as an exhibit to the pending motion, Apple demonstrated its "willingness to violate the Agreement," because "the Agreement itself constitute[s] Confidential Information." Opp. at 16. This argument is misplaced, however, as Apple's duty to protect the confidentiality of the agreement expired years ago. *See* Reply at 11 (citing Dkt. No. 46-3 ("Confidentiality Agreement") § 8).

3

(providing that "Confidential Information shall not include information that (a) is now or subsequently becomes generally available to the public through no fault or breach on the part of [Apple] . . . [or] (c) is independently developed by [Apple] without the use of any Confidential Information").[2]

Because the amended complaint fails to allege exploited confidential information—the only alleged breach of the confidentiality agreement in the amended complaint—dismissal of Zomm's breach-of-contract claim is warranted. At the hearing on this motion, however, Zomm stated that it could add specificity in a further amended complaint to detail pre-December 2011 conduct. The Court thus finds that leave to amend is warranted.

### C. CLUC Claim

The amended complaint alleges that Apple engaged in common-law unfair competition. FAC ¶¶ 94–98. Specifically, it alleges that "Apple misappropriated and is using Zomm's intellectual property and technology" related to the Wireless Leash and Wireless Leash Plus "for Apple's own benefit." *Id.* at 96–97. Zomm additionally states that "Apple baited Zomm into signing the Confidentiality Agreement to obtain access to Zomm's confidential information, despite having no intention of abiding by its terms." *Id.* at 97.

Apple moves to dismiss on a number of grounds: (1) Zomm does not allege any "passing off"; (2) Zomm's claim is preempted under federal patent law, superseded by California's Uniform Trade Secrets Act ("CUTSA"), and otherwise fails to state a claim; and (3) the allegation that Apple "baited" Zomm into signing the agreement "sounds in promissory fraud" and fails Rule 9(b)'s pleading requirements. The Court need not address Zomm's "passing off" argument because dismissal is warranted on other grounds.

Although Zomm does not identify what "intellectual property and technology" Apple purportedly misappropriated, the Court finds that the only fair reading of the amended complaint

---

[2] The Court finds that it may incorporate the confidentiality agreement into the operative complaint by reference. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (explaining that under the incorporation-by-reference doctrine, a court may "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached [to] the [plaintiff's] pleading" (citation omitted)). And at the hearing on the motions, no party disputed the Court's ability to incorporate the agreement by reference.

4

is that the underlying intellectual property and/or technology is either patentable or subject to trade secrecy. But to the extent Zomm's CLUC claim is based on alleged infringement of the '895 Patent, the claim is preempted by federal patent law. *See Medina v. Microsoft Corp.*, No. C 14-0143 RS, 2014 WL 2194825, at *3 (N.D. Cal. May 23, 2014) ("To the extent Medina's UCL claim proceeds under the 'unlawful' prong of the statute due to defendants' alleged patent infringement, it is preempted."); *see also* 35 U.S.C. § 271 (providing that federal patent infringement applies to "whoever without authority makes, uses, offers to sell, or sells any patented invention").

Taking away any alleged patent infringement, the Court turns to whether Zomm's CLUC claim is identical to a claim under, and thus superseded by, CUTSA.

### 1. CUTSA

CUTSA permits civil recovery of "actual loss" or other injury caused by the misappropriation of trade secrets. *See* Cal. Civ. Code § 3426.3. It defines "misappropriation" as the improper acquisition, or non-consensual disclosure or use of another's trade secret. *Id.* § 3426.1(b). "Trade secret" is defined as information that derives "independent economic value" from its confidentiality and "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Id.* § 3426.1(d).

CUTSA includes a savings clause that "preempt[s] claims based on the same nucleus of facts as trade secret misappropriation." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 90 Cal. Rptr. 3d 247, 264 (Ct. App. 2009); *see also* Cal. Civ. Code § 3426.7(b). The savings clause does not preempt "contractual remedies" and civil remedies "that are not based upon misappropriation of a trade secret." *Silvaco Data Sys. v. Intel Corp.*, 109 Cal. Rptr. 3d 27, 48 (Ct. App. 2010), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011).

Following the nucleus of facts test, numerous courts have held that CUTSA supersedes other state-law claims where the wrongdoing alleged is the misappropriation of trade secret information. *See, e.g., SunPower Corp. v. SolarCity Corp.*, No. 12–cv–00694–LHK, 2012 WL 6160472, at *13 (N.D. Cal. Dec. 11, 2012) (dismissing CLUC claims as preempted by CUTSA

5

where "while stated in various ways, each [claim] alleges in essence that Defendants [misappropriated] . . . proprietary information"); *K.C. Multimedia, Inc.*, 90 Cal. Rptr. 3d at 263–64 (holding breach of confidence, interference with contract, and CLUC claims were superseded because "the conduct at the heart of" the common law and CUTSA claim was "the asserted disclosure of trade secrets"). In other words, common law tort claims are displaced by CUTSA where they "do not genuinely allege 'alternative legal theories' but are a transparent attempt to evade the strictures of CUTSA by restating a trade secrets claim as something else." *Silvaco*, 109 Cal. Rptr. 3d at 54. But a common law tort claim is not displaced by the CUTSA where the alleged wrongdoing "is not based on the existence of a trade secret." *Angelica Textile Servs., Inc. v. Park*, 163 Cal. Rptr. 3d 192, 203 (Ct. App. 2013).

Although the California Supreme Court has not clearly defined the scope of CUTSA's supersession of claims arising from the alleged misappropriation of non-trade secret information, "the majority of district courts that have considered *Silvaco* have held that CUTSA supersedes claims based on the misappropriation of information that does not satisfy the definition of trade secret under CUTSA." *SunPower Corp.*, 2012 WL 6160472, at *6; *see also Heller v. Cepia, L.L.C.*, No. C 11–01146 JSW, 2012 WL 13572, at *7 (N.D. Cal. Jan. 4, 2012) (holding that common law claims premised on "the wrongful taking and use of confidential business and proprietary information, regardless of whether such information constitutes trade secrets, are superseded by the CUTSA"); *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011) ("[T]he Court concludes that [C]UTSA supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret."). Although a handful of decisions have held otherwise, the substantial majority of contrary decisions were either decided before the California Court of Appeals' *Silvaco* decision or failed to consider *Silvaco* entirely. *See SunPower Corp.*, 2012 WL 6160472, at *7 (collecting cases).

As is relevant here, where a cause of action also arises from misconduct besides misappropriation, it can survive CUTSA supersession. *See Loop AI Labs Inc v. Gatti*, No. 15-cv-00798-HSG, 2015 WL 5158461, at *3 (N.D. Cal. Sept. 2, 2015) (finding, among other things, that

the operative complaint adequately alleged that defendant fraudulently induced plaintiff to offer defendant employment based on misrepresentations).

### 2. Application

Zomm argues that CUTSA supersession should not apply because the operative complaint alleges deceptive conduct by Apple, which Zomm views as identical to the facts from *Loop AI Labs Inc. See* Mot. at 11–12. But that comparison assumes that Zomm has adequately alleged deceptive conduct, which it has not. The only purportedly deceptive conduct alleged by Zomm is that Apple "baited" Zomm into signing the confidentiality agreement. *See* FAC ¶ 97. But that allegation "sounds in fraud" and thus must be pleaded with particularity under Rule 9(b).

In opposition to Apple's motion, however, Zomm does not argue that the operative complaint pleaded the allegedly deceptive conduct with particularity. Nor could it. Rule 9(b) demands that Plaintiffs allege the "'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.") (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Plaintiffs have not come close to meeting that requirement.

Given that Zomm's only basis for avoiding CUTSA supersession is that the amended complaint also alleges deceptive conduct, which the Court finds is not pled with the requisite particularity under Rule 9(b) in the amended complaint, the Court finds that CUTSA supersedes Zomm's CLUC claim, to the extent it is not already preempted under federal patent law. Although the Court finds dismissal is warranted, it cannot say at this point that Plaintiff could not amend the complaint to include facts that meet Rule 9(b)'s particularity requirement and thus finds that leave to amend is warranted.

//

//

//

## II. MOTION TO STAY

In addition to moving to dismiss Zomm's non-patent causes of action, Apple moves to stay Zomm's patent cause of action pending IPR. At the time Apple filed the pending motion, it had submitted two IPR petitions challenging the patentability of all claims of the asserted patent. *See* Mot. at 16. At the hearing on this motion, the Court granted a temporary stay, at least until the Director of the U.S. Patent and Trademark Office ("USPTO") decided whether to institute IPR. *See* 35 U.S.C. § 314 (providing that the Director of the USPTO decides whether to institute review based on whether "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged"). And on May 10, 2019, the USPTO issued decisions instituting review on Apple's two IPR petitions. *See* Dkt. Nos. 77–78. Final written decisions concerning these petitions likely will issue no later than May 10, 2020. *See* 35 U.S.C. § 316(a)(11); 37 C.F.R. § 42.100(c).

After the hearing on this motion, Apple submitted a third IPR petition on a new ground. *See* Dkt. Nos. 77–78. That petition was accorded a filing date of April 30, 2019. *See Apple Inc v. Zomm, LLC*, No. IPR2019-01030, Paper No. 3 (P.T.A.B. May 8, 2019). Given the date of PTAB's notice indicating that the request to institute review was granted a filing date, an institution decision is due on this third petition no later than November 8, 2019. *See id.*; 35 U.S.C. § 314; 37 C.F.R. § 42.107. If review is instituted, a final written decision likely would issue no later than November 8, 2020. *See* 35 U.S.C. § 316(a)(11); 37 C.F.R. § 42.100(c).

### A. Legal Standard

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending [IPR]." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) (internal citations omitted); *IXI Mobile (R & D) Ltd. v. Samsung Elecs. Co.*, No. 15-cv-03752-HSG, 2015 WL 7015415, at *2 (N.D. Cal. Nov. 12, 2015). Courts consider three factors in determining whether to grant a stay pending IPR: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *IXI Mobile (R & D) Ltd.*, 2015 WL 7015415, at *2 (quoting *Evolutionary*

8

*Intelligence, LLC v. Facebook, Inc.*, No. 13-cv-04202-SI, 2014 WL 261837, at *1 (N.D. Cal. Jan. 23, 2014)). The moving party bears the burden of demonstrating that a stay is appropriate. *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 14-cv-05330-HSG, 2015 WL 1967878, at *2 (N.D. Cal. May 1, 2015).

Courts in this district have often recognized "a liberal policy in favor of granting motions to stay" pending IPR. *See Pragmatus AV, LLC v. Facebook, Inc.*, No. 11–cv–02168–EJD, 2011 WL 4802958, at *2 (N.D. Cal. Oct. 11, 2011); *IXI Mobile (R & D) Ltd.*, 2015 WL 7015415, at *2. Courts, however, must evaluate stay requests on a case-by-case basis. *See GoPro, Inc. v. C&A Marketing, Inc.*, No. 16-cv-03590-JST, 2017 WL 2591268, at *2 (N.D. Cal. June 15, 2017). And whether to stay is always within the court's discretion.

**B.    Discussion**

**1.    Factor 1: Stage of the Proceedings**

The first factor the Court considers is whether the litigation is at an early stage. *See AT&T Intellectual Property I v. Tivo, Inc.*, 774 F. Supp. 2d 1049, 1052 (N.D. Cal. 2011). Specifically, courts consider "whether discovery is complete and whether a trial date has been set." *Evolutionary Intelligence*, 2014 WL 261837, at *1.

Apple's motion contends that this factor "strongly favors a stay because this case is still in its infancy." Mot. at 17. And at the time Apple's submitted its motion, the Court had yet to issue a scheduling order. *Id.* Zomm counters that this case is no longer "in its infancy," as under the since-implemented scheduling order, the deadlines for "Asserted Claims and Infringement Contentions and Corresponding Document Production," Invalidity Contentions and Corresponding Document Production," and "Exchange of Proposed Terms for Claim Construction" have since passed. Opp. at 19–20; Dkt. No. 50 (Scheduling Order). Apple responds that this factor ought to consider the date the motion for stay was filed, not what has happened since. Reply at 11–12 (citing *Hewlett-Packard Co. v. ServiceNow, Inc.*, No. 14-cv-00570-BLF, 2015 WL 1737920, at *2 (N.D. Cal. Apr. 9, 2015)).

Contrary to Apple's suggestion, the Court may consider events after the motion's filing. As another court in this district rightly explained, while the Court should consider the case's

9

landscape as of the motion's filing, "the Federal Circuit has also made clear that courts are not obligated to ignore advances in the litigation at the time it considers the motion." *GoPro, Inc.*, 2017 WL 2591268, at *3 (internal quotation marks omitted). Nevertheless, although some milestones have passed in this case, the Court finds that "significant work remains to be done," given that "[n]o expert discovery has been conducted, no substantive motions have been filed, and no trial date has been set." *See DSS Tech. Mgmt., Inc.*, 2015 WL 1967878, at *2. And at the hearing on this motion, the Court issued a temporary stay in the litigation pending "at least until the PTAB's institution decision." *See* Dkt. No. 75. Considering the relatively early stage of this litigation, the Court thus finds that this factor weighs in favor of a stay.

### 2. Factor 2: Simplification of the Case

Defendant argues that this factor "also strongly favors an immediate stay . . . because Apple's IPRs are likely to simplify or resolve entirely the patent issues in this case." Mot. at 18. Apple contends that (1) it "petitioned for review of all claims of the sole asserted patent," (2) "historical PTO behavior indicates Apple's IPRs have a high likelihood of being instituted and of resulting in cancellation of all asserted claims," (3) "even if some claims survive Apple's IPRs, the requested stay is still likely to simplify this case," (4) a stay "is the most efficient use of the Court's and the parties' resources," and (5) "this case is distinguishable from the rare, extraordinary instances . . . in which the IPRs did not significantly simplify the issues for trial." *Id.* at 19–22. Among other arguments, Zomm counters that, at the time of the parties' briefing on this motion, Apple had yet to "obtain[] PTO review of *any* asserted claim" and it would have been entirely speculative to predict what the PTO would do in this case based on past behavior. Opp. at 20–21.

This factor weighs in favor of a stay. As other courts have noted, a crucial consideration under this factor is the status of the institution decision. *See GoPro, Inc.*, 2017 WL 2591268, at *4. Given the USPTO Director has instituted review of Apple's first two petitions, and given that the Patent Trial and Appeal Board ("PTAB") must now issue final written decisions as to every ground raised in the instituted petition under recent Supreme Court case law, there is a real possibility that the IPR process will simplify the case. *See SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348,

1359–60 (2018); *see also* 35 U.S.C. § 316(c) (providing that PTAB "conduct[s] each [IPR] instituted under this chapter").

### 3. Factor 3: Prejudice and Disadvantage

The final factor considers whether a stay would unduly prejudice the nonmoving party. And courts here consider whether the moving party engaged in dilatory tactics, such as seeking review in an untimely fashion. *See GoPro, Inc.*, 2017 WL 2591268, at *4. All told, courts address four considerations when evaluating prejudice: (1) the timing of the IPR petition; (2) the timing of the stay request; (3) the status of review; and (4) the relationship of the parties. *See SAGE Electrochromics, Inc. v. View, Inc.*, No. 12-cv-06441-JST, 2015 WL 66415, at *3 (N.D. Cal. Jan. 5, 2015) (quoting *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 508 (D. Del. 2012)).

#### a. Timing of IPR Petition and Request for Stay

Stays pending IPR can result in substantial delay in the district court proceeding. As a result, defendants ought to file IPR petitions as soon as practically possible. The Court here does not presume that Apple delayed in submitting its IPR petitions. *Cf. TPK Touch Sols., Inc. v. Wintek Electro-Optics Corp.*, No. 13-cv-02218-JST, 2013 WL 6021324, at *4–5 (N.D. Cal. Nov. 13, 2013 (finding delay and a lack of diligence where a party "filed for IPR only after first filing for *ex parte* reexamination and filing a motion for stay based on *ex parte* reexamination, and only after engaging in additional motion practice that even [it] appears to have concluded was unnecessary"). At the same time, the Court must consider that Apple's third IPR petition, even if filed diligently, has added another level of delay. Accordingly, the Court finds that this consideration weighs against a stay, at least as to Apple's recently submitted petition for IPR.

#### b. Status of Proceedings

At the time of filing the pending motion, Apple did not dispute that this consideration weighed against a stay because, at that time, "the PTO [had] yet to rule on Apple's IPR petitions." Mot. at 23. An institution decision has since been issued as to Apple's first two IPR petitions, but a decision on Apple's third IPR petition is pending. Thus, this factor weighs in favor of a stay, at least as to Apple's first two IPR petitions.

11

### c. Relationship of the Parties

Where parties are direct competitors, the risk of prejudice to the non-moving party is higher than it would be otherwise. *See TPK Touch Sols. Inc.*, 2013 WL 6021324, at *5. Here, Apple argues "there is no evidence that Zomm competes with Apple," because although Zomm accuses Apple's watch products of infringement, "Zomm does not allege that it has ever sold a smartwatch or any other type of wearable, smart device." Mot. at 22. And even assuming the parties are direct competitors, Apple contends that "Zomm does not allege that any of its products practice any invention claimed in the asserted patent." *Id.* Zomm responds that its "Wireless Leash Plus product . . . that included a feature at the heart of Zomm's patent infringement cause of action" is on sale. Opp. at 23. And Zomm adds that "[h]ad Apple not introduced the Emergency SOS feature, consumers would need to purchase Zomm's Wireless Leash Plus product (or another similar product, if one exists) to achieve the same functionality." *Id.* at 24.

In its reply brief, Apple notes that "Zomm has admitted that none of its products practice the claimed inventions." Reply at 14; *see also* Dkt. No. 62-3 at 4 (January 11, 2019 "Asserted Claims and Infringement Contentions," stating that "Zomm does not presently assert any of its own products practice the claimed inventions"). Given that Zomm admits its products do not practice the claimed inventions, the Court finds that the parties are not direct competitors as it relates to the patent at issue in this suit. In turn, the Court finds that this consideration weighs in favor of a stay.

### d. Conclusion as to Prejudice

Balancing the sub-factors, the Court finds that the prejudice and disadvantage factor weighs in favor of a stay, at least as to Apple's first two IPR petitions.

### 4. Motion to Stay Conclusion

Having considered the relevant factors in their entirety, the Court finds within its discretion that a stay pending *inter partes* review is warranted, at least as to Apple's first two IPR petitions.

//

//

//

**III. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Apple's motion, thus dismissing Zomm's non-patent causes of action and staying the patent cause of action pending IPR.

As to the dismissal portion of this order, Zomm may file a further amended complaint within thirty (30) days of this order. If and when Zomm states a viable non-patent cause of action, the Court will set a further case management conference, to discuss setting a case schedule for any non-patent claim.

As to the stay of the patent cause of action, the Court will consider lifting the stay upon the issuance of final written decisions on Apple's first two petitions for IPR, at which point the USPTO Director will have decided whether to institute review of Apple's third petition. And the parties shall file a joint status report within five days of the issuance of such final written decisions. At that point, the Court will issue an order addressing further proceedings in the case. As the Court explained at the hearing on this motion, the Court will not continue the stay pending any appeal of final written decisions.

**IT IS SO ORDERED.**

Dated: 6/17/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge

13